**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

CYNTHIA DIANE WEBB,                )
                                   )
        Plaintiff,             )
                                   )
                                   ) Case No. CIV-21-005-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
        Defendant.             )

**REPORT AND RECOMMENDATION**

Plaintiff Cynthia Diane Webb (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. She appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. She has at least a high school education and past relevant work as a personal care aide, personal care coordinator, stocker, and a sacker. She alleges an inability to work beginning on February 3, 2017, due to limitations resulting from degenerative disc disease, pinched nerve in neck, tingling and burning in the hands and feet, history of heart attack, arthritis in knees (needs right knee replacement), virus in the right eye with a scar on the cornea, major depression, post-traumatic stress disorder (PTSD), panic disorder, and extreme forgetfulness.

## Procedural History

On February 3, 2017, Claimant protectively filed an

application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. (Tr. 113). Claimant's application was denied initially and upon reconsideration. On September 18, 2019, ALJ Glenn A. Neel conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On July 31, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on November 27, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because (1) the RFC is not consistent with the evidence (with various subparts), and (2) the ALJ's step-five findings are improper.

### RFC Determination

In his decision, the ALJ found Claimant suffered from severe impairments of osteoarthritis/degenerative disc disease of the cervical spine, coronary artery disease status post-myocardial

4

infarction and stenting, right shoulder degenerative joint disease, tendinosis and bursitis, left knee patellofemoral compartment chondromalacia, generalized osteoarthritis, lumbago, obesity, bilateral carpal tunnel syndrome post-right carpal tunnel release surgery, mild cognitive impairment, major depression with early onset dysthymia, generalized anxiety disorder, panic disorder, and PTSD. (Tr. 37). He determined Claimant could perform sedentary work with additional limitations. Claimant could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently; stand and/or walk with normal breaks for a total of four hours in an eight-hour workday; sit with normal breaks for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently, but not constantly, reach, handle, and finger bilaterally; and must avoid concentrated exposure to temperature extremes, humidity, and hazards, including no driving as part of work. Claimant was capable of performing work involving simple and some complex tasks, with routine supervision. She could relate superficially to co-workers and in an incidental manner with the public. She could adapt to a work situation. (Tr. 40-41).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of document preparer, printed circuit board inspector, and copy

examiner, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 46-47). As a result, the ALJ concluded Claimant had not been under a disability since February 3, 2017, the date the application was filed. (Tr. 47).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence because it does not include all of her limitations and does not comply with the applicable legal standards. She first asserts that the manipulative limitations the ALJ included in the RFC are not consistent with the evidence, as she is precluded from lifting and carrying twenty pounds because of the limited use of her upper extremities, and her neck, shoulder, and upper extremity pain would preclude her from frequently working/reaching overhead, pushing, and pulling. She maintains that the most she could perform would be occasional reaching, handling, and fingering bilaterally.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the individual's ability to perform sustained work activities in an

ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ specifically considered the medical evidence and the Claimant's reported problems regarding her neck, shoulder, and upper extremities. Prior to her onset date, it was noted at an August of 2016 appointment that Claimant underwent cervical epidural steroid injections in December of 2015 and again in July of 2016 for numbness and tingling in her hands and feet and possible right radicular symptoms. Her MRI was not indicative of surgical pathology. Pertinent impressions included probable bilateral carpal tunnel syndrome and degenerative disc disease of the cervical spine with chronic neck pain with possible right radicular component. (Tr. 42, 512). X rays of Claimant's cervical spine in July of 2017 revealed mild degenerative changes at C4 through C7 and grade one retrolisthesis of C4 on C5 and C5 on C6. (Tr. 43, 608). At a routine visit in August of 2017, Claimant requested an MRI of her neck and shoulders. Her symptoms included

7

osteoarthritis/degenerative joint disease, cervicalgia, right shoulder pain, and numbness, tingling, and burning in the bilateral upper extremities. Claimant's examination revealed bilateral upper extremity weakness and neuropathy and right shoulder tenderness. Claimant was assessed with generalized anxiety disorder, cervicalgia, primary generalized osteoarthritis, and hypertension. (Tr. 588-89). Claimant's MRI of the cervical spine from October of 2017 revealed stable degenerative changes of the cervical spine and resolved maxillary sinusitis and resolved supraclavicular lymph nodes. (Tr. 610-11).

Claimant was seen in February of 2018 for medication refills and for numbness and tingling in the hands and feet. She reported no stiffness, pain, or tenderness in her neck. Claimant reported right shoulder pain and numbness and tingling to the upper extremities, but no limitation in range of motion. (Tr. 43, 622-23). At a cardiology appointment in May of 2018, Claimant was noted to move all her extremities well, exhibited no numbness, weakness tingling, or burning, and had normal strength and tone, and a normal gait. (Tr. 672-75).

In April of 2019, Claimant was seen for routine follow-up and medication refills. Her ongoing problems included cervicalgia, osteoarthritis, degenerative joint disease, hypertension, and bilateral upper extremity neuropathy. She described her activity level as active. She had no neck stiffness, pain, or tenderness.

She had right shoulder pain, no limitation in range of motion, and numbness and tingling to the upper extremities. (Tr. 43-44, 776-78). She was examined in July of 2019, regarding her bilateral upper extremity symptoms. Her physical examination revealed positive Tinel's bilaterally, positive median nerve compression test within five seconds of compression on both right and left wrists, decreased range of motion in the cervical spine, negative Spurling's and Adson's, bicep reflex of 2+, brachloradialls reflex of 2+, and radial pulse of 2+, positive neural tension in the right upper extremity, and no obvious intrinsic muscle atrophy or wasting. Claimant was assessed with carpal tunnel syndrome bilaterally, referred for EMGs/NCVs, and surgery was discussed. (Tr. 44, 801). She returned in September of 2019 after having EMGs/NCV studies completed. The EMG studies confirmed findings of bilateral carpal tunnel syndrome. (Tr. 44, 852).

Claimant underwent right carpal tunnel release surgery in November of 2019. She returned for follow up in December of 2019, noting she had been unable to comply with restrictions because she was caring for her disabled two-year old grandson. Claimant was experiencing pain and continued numbness in her hand, but she took responsibility for the negative outcome, and it was noted she could still improve. (Tr. 44, 854-55). Claimant was seen just a few days later for a routine follow-up appointment and for medication refills. She had no neck stiffness, pain, or tenderness, but did

9

complain of right shoulder pain, no limitation in range of motion, numbness and tingling to the upper extremities, and right wrist and forearm pain. (Tr. 44, 866-67).

In addition to summarizing the medical evidence of Claimant's neck, shoulder, and upper extremity impairments, the ALJ also discussed the state agency physicians' opinions, wherein he assigned them substantial weight, but included more restrictive manipulative limitations for Claimant in the RFC. For example, in January of 2018, state agency physician Larry Ressler, M.D., only limited Claimant to frequently reaching with the right upper extremity in front, laterally, and overhead. He did not limit Claimant's reaching, handling, and fingering in any other way. (Tr. 44-45, 140-42). The ALJ limited Claimant to frequently but not constantly reaching, handling, and fingering bilaterally. (Tr. 41). The ALJ further relied upon Claimant's daily activities when determining her RFC. (Tr. 42). Thus, the ALJ adequately accounted for limitations in the RFC associated with Claimant's neck, shoulder, and upper extremity impairments. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Claimant also argues that her mental impairments are more severe than the limitations in the RFC indicate. She contends that the ALJ failed to account for her emotional lability and her fear

of being around a large amount of people. She specifically asserts that the ALJ failed to properly account for the opinions of consultative psychologist Theresa Horton, Ph.D., and Claimant's counselor Cheri Stahlman, MS, LPC.

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).[2] He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ discussed Dr. Horton's consultative psychological examination of Claimant. Dr. Horton examined Claimant in October of 2017. She noted Claimant had appropriate eye contact, normal speech, friendly attitude, appropriate cooperation, and logical,

---

[2] Because Claimant filed her application prior to March 27, 2017, the opinion evidence is subject to the prior regulations. *See* 20 C.F.R. § 416.927.

organized, and goal-directed thought processes. Claimant's mood was predominantly anxious and depressed, affect was content congruent and expressive, and judgment was appropriate and insight fair. Based upon a cognitive assessment, Claimant was noted to have mild cognitive impairment and needed encouragement to perform. Dr. Horton assessed Claimant with mild cognitive impairment, chronic PTSD, and early onset dysthymia. Her prognosis indicated that Claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks, but that Claimant might not adjust as well in areas that are fast paced and/or densely populated. She also noted Claimant might benefit from maintaining lists in order to assist with her forgetfulness. (Tr. 43, 45, 591-96). The ALJ afforded Dr. Horton's opinion "some weight" because it was based upon examination findings and was supported by explanation. He found it broadly consistent with the relevant medical evidence of record concerning Claimant's mental impairments and limitations. (Tr. 45).

The ALJ also considered the September of 2019 statement from Claimant's counselor, Ms. Stahlman, who had been treating Claimant since December of 2017. Claimant had diagnoses of major depressive disorder and acute stress reaction, which included anxiety, panic, depression, and criteria consistent with PTSD. She stated that Claimant "appears to exhibit frequent emotional responses that are out of proportion to situations, especially in social situations

and/or confrontation, which appears to inhibit her ability to perform duties." (Tr. 45, 803). The ALJ afforded Ms. Stahlman's opinion "some weight" to the extent it supported finding that Claimant was capable of relating superficially with co-workers and relating in an incidental manner with the public. (Tr. 45).

The Court finds no error in the ALJ's evaluation of the opinions from Dr. Horton and Ms. Stahlman. The ALJ included limitations in the RFC that are consistent with not only Claimant's fear of being around people and her emotional lability, but that also account for the opinions of Dr. Horton and Ms. Stahlman. The ALJ limited Claimant to work involving simple and some complex tasks with routine supervision, Claimant can relate superficially to co-workers, and can relate in an incidental manner to the public. She can adapt to a work situation.[3]

Claimant further argues that the ALJ failed to evaluate her subjective complaints in accordance with the appropriate factors. Deference must be given to an ALJ's evaluation of Claimant's pain

---

[3] To the extent the ALJ did not completely account for the limitations, he was not required to because both statements were equivocal. *See Paulsen v. Colvin*, 665 Fed. Appx. 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC.") (emphasis in original).

or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

When considering Claimant's subjective complaints, the ALJ discussed Claimant's complaints on her function report, summarized Claimant's testimony, and noted that her medically determinable impairments could reasonably be expected to cause her symptoms, but her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 41-42). He specifically noted that Claimant's statements were inconsistent with the relevant medical evidence, which he addressed within his

14

decision (Tr. 42-44), discussed the nature of Claimant's treatment, including medications, injections, and surgery (Tr. 42-44), and discussed her activities of daily living. (Tr. 42). This Court finds no error in the ALJ's analysis of Claimant's subjective complaints.

## Step-Five Determination

Claimant asserts the ALJ's hypothetical to the VE was incomplete because it failed to include all of Claimant's limitations. This Court has determined that the ALJ's consideration of Claimant's impairments was appropriate, and the limitations included in the RFC were supported by substantial evidence. The ALJ's questioning of the VE accurately reflected the RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and

15

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE